**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| MARK HARRIS, | No. ED CV 10-1368-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 17, 2010, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 29, 2010, and October 1, 2010. The parties filed a Joint Stipulation on March 28, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 17, 1960. [Administrative Record ("AR") at 16, 43.] He obtained a GED; went to trade schools for welding, construction, and electrician training; and has past relevant work experience as an electrician apprentice, truck driver, and welder. [AR at 14, 47, 49, 58-59, 63-64, 66-67.]

On June 4, 2008, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since April 13, 2005, due to, among other things, back injury, deteriorating spinal cord, left hand numbness, and high blood pressure. [AR at 11, 16, 18, 43-46, 57-65.] After plaintiff's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 18-23, 26-31.] A hearing was held on March 8, 2010, at which time plaintiff's counsel appeared, but plaintiff did not. The ALJ found plaintiff to be "an unnecessary witness" and decided the matter on the record without receiving any testimony.[1] [See AR at 11, 122-25.] On April 5, 2010, the ALJ determined that plaintiff was not disabled. [AR at 8-15.] When the Appeals Council denied plaintiff's request for review of the hearing decision on August 25, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 3-6.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] The ALJ told plaintiff's counsel that he would reset the hearing date if plaintiff established good cause for missing the hearing before the ALJ issued a decision. [See AR at 124.] In requesting review of the ALJ's April 5, 2010, hearing decision, plaintiff stated that he never received notice about his hearing until he "received a call from [his] attorney on the same day of the hearing telling [him] that [he] had the appointment," but that he "had no transportation." [AR at 6.] It does not appear that plaintiff timely asked that the hearing date be reset.

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since June 4, 2008, the application date. [AR at 13.] At step two, the ALJ concluded that plaintiff has severe impairments of the neurological system and musculoskeletal system. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work,[3] "except he can occasionally climb, balance,

---

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   "Light work" is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be
(continued...)

stoop, kneel, crouch and crawl ... [and] should avoid working at heights or around dangerous machinery." [Id.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 14.] At step five, the ALJ found, relying on the Medical-Vocational Guidelines (i.e., "the grids") and the state agency's opinion that plaintiff could perform unskilled sedentary jobs, that there are jobs existing in significant numbers in the national economy that plaintiff can perform. [AR at 14-15; see AR at 40-42.] Accordingly, the ALJ found plaintiff not disabled. [AR at 15.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) consider the treating physician's opinion; (2) consider the state agency physician's opinion; (3) determine plaintiff's RFC; (4) consider plaintiff's credibility; and (5) determine whether plaintiff could perform other work. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    THE MEDICAL OPINION EVIDENCE AND RFC DETERMINATION**

Plaintiff contends that the ALJ failed to properly consider the medical opinion evidence and erred in reaching the RFC determination. Specifically, plaintiff argues that the ALJ improperly ignored a July 28, 2009, Medical Report (which plaintiff argues was likely completed by his treating physician, Dr. Maithri Weerasinghe) and a January 26, 2009, Physical Residual Functional Capacity Assessment ("PRFCA") completed by a nonexamining physician whose signature is illegible. Plaintiff further contends that although the ALJ stated in the decision that he credited the October 4, 2008, opinion of examining physician Dr. Bryan H. To, the ALJ erred by not fully incorporating Dr. To's findings concerning plaintiff's functional limitations in the RFC determination

---

[3](...continued)
considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

and by not providing any reasons for partially rejecting Dr. To's findings. [See JS at 3-5, 8-9, 12-14.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); Social Security Ruling[4] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Likewise, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews 53 F.3d at 1043).

The regulations provide that although ALJs "are not bound by any findings made by [nonexamining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider [their] findings and other opinions ... as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled," because such specialists are regarded as "highly qualified ... experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The regulations further provide that "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). See also SSR 96-6p ("Findings ... made by State agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

On October 4, 2008, Dr. To completed a summary report of an Independent Internal Medicine Evaluation, in which he noted plaintiff's reported history of, among other things, low back pain that radiates down his right leg, hypertension, TIA (transient ischemic attack), and CVA (cerebrovascular accident) with residual left-sided weakness, as well as a reported diagnosis of "spinal cord disease." [See AR at 99-104.] Dr. To stated that plaintiff's physical and neurological examinations revealed, among other things, that plaintiff walked with a limp secondary to right leg weakness and numbness, had range of motion pain and weakness in his right leg, and had range of motion pain in his back. [AR at 101-02.] Dr. To opined, "[b]ased on the objective findings of [his] examination," that plaintiff should be limited to pushing, pulling, lifting, and carrying 20 pounds occasionally and 10 pounds frequently; two hours of standing and walking in an eight-hour workday; and only occasional walking on uneven terrain, ladder climbing, working with heights, bending, kneeling, stooping, crawling, and crouching, and should be restricted from working with

heavy and moving machinery. Dr. To also opined that plaintiff "[m]ay need a cane for prolonged ambulation." [AR at 103.]

In a PRFCA dated November 5, 2008, nonexamining physician Dr. E. Johnson offered an opinion concerning plaintiff's functional limitations that was similar to that of Dr. To, except that Dr. Johnson found plaintiff able to stand and/or walk for "about 6 hours in an 8-hour workday" and did not include the limitations that plaintiff could only occasionally walk on uneven terrain and might need to use a cane for prolonged ambulation. [See AR at 107-12.] In a second PRFCA dated January 26, 2009, another nonexamining physician (whose signature is illegible) opined that plaintiff has most of the same limitations as those assessed by Dr. To -- including that plaintiff needs a "cane for long ambulation" and can stand and/or walk for two hours in an eight-hour workday.[5] [See AR at 114-19.] The second nonexamining physician highlighted the standing/walking discrepancy between Dr. To's and Dr. Johnson's opinions, noting that Dr. Johnson provided "no explanation" for not adopting Dr. To's standing/walking restriction. [See AR at 113.]

In a Medical Report dated July 28, 2009, that was completed by someone from Dr. Mike's Walk In Clinic (which plaintiff listed as the location of his treating physician, Dr. Weerasinghe [see AR at 60]), plaintiff was diagnosed with degenerative disc disease and L4-L5 spinal stenosis, for which plaintiff was referred to neurosurgery, and an MRI of plaintiff's lumbosacral spine had been ordered. The author of the Medical Report noted that plaintiff's symptoms "may improve considerably following surgery, probably." [AR at 121.] Further, plaintiff was assessed as being "incapacitated" from July 2009 to 2010 and unable to work, and it was noted that he had limitations with lifting, stooping, and pulling. [Id.]

In the decision, the ALJ discussed some of the findings of Dr. To and Dr. Johnson (including Dr. To's opinion that plaintiff needs to use a cane for prolonged ambulation) and stated that he "agree[d] with the [RFC] as assessed by the State Agency medical consultants and the

---

[5] The January 26, 2009, PRFCA did not include Dr. To's opinion that plaintiff could only occasionally walk on uneven terrain. [AR at 114-19.]

consultative examiner." [See AR at 13-14, citing AR at 99-104 (Dr. To's October 4, 2008, Evaluation), AR at 107-12 (Dr. Johnson's November 5, 2008, PRFCA).] However, the ALJ did not include in his RFC determination Dr. To's finding that plaintiff is limited to only two hours of standing and walking during an eight-hour workday, may need to use a cane for prolonged ambulation, and can only occasionally walk on uneven terrain, nor did the ALJ explain why these aspects of Dr. To's opinion were omitted from the RFC determination. [See AR at 13-14.] The ALJ also failed to even *mention* the January 26, 2009, PRFCA or the July 28, 2009, Medical Report, let alone explain the weight that he afforded those two medical opinions. [Id.]

       The ALJ's consideration of the medical opinion evidence was inadequate. Even though the ALJ discussed some of Dr. To's findings and asserted that he relied on his opinion in reaching the RFC determination, because the ALJ ignored and excluded from the RFC determination some of Dr. To's specific findings (i.e., that plaintiff can only stand and walk for two hours, needs a cane for prolonged ambulation, and can only occasionally walk on uneven terrain), it appears that the ALJ implicitly rejected those portions of Dr. To's opinion without providing any reason for doing so. Likewise, as the medical opinions expressed in the January 26, 2009, PRFCA and the July 28, 2009, Medical Report are inconsistent with the ALJ's RFC determination, and the ALJ did not acknowledge those opinions or the weight he afforded them in the decision, it appears that the ALJ implicitly rejected those opinions as well. This constitutes error. "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's failure to explain why he disregarded medical evidence prevented "meaningful judicial review"). The ALJ's failure to expressly explain why he apparently rejected the findings represented in Dr. To's Evaluation, the January 26, 2009, PRFCA, and the July 28, 2009, Medical Report[6] as

---

[6] Although defendant is correct that the ALJ is not bound to adopt the opinion expressed in the July 28, 2009, Medical Report that plaintiff is unable to work [see JS at 6; AR at 121], the ALJ was still required (whether the Medical Report is characterized as a treating or examining opinion) to explain the weight he afforded the Medical Report and provide specific and legitimate reasons for why he apparently rejected the opinions expressed therein. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (although "[t]he [ALJ] is not bound by the uncontroverted opinions of the
(continued...)

9

discussed above prevents meaningful judicial review. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) (internal citation omitted).

Furthermore, in determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see SSR 96-8p, 1996 WL 374184, at *5, *7. Since the ALJ failed to provide proper reasons for why he apparently rejected some of the medical opinion evidence concerning plaintiff's physical limitations, the ALJ's RFC determination is likewise flawed. See SSR 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); see also 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2).

Accordingly, remand is warranted for the ALJ to properly consider the medical opinion evidence and reassess plaintiff's RFC.

### B. PLAINTIFF'S CREDIBILITY

Plaintiff argues that the ALJ improperly rejected plaintiff's credibility and subjective symptoms. [JS at 14-17.]

In various disability forms, plaintiff stated that he suffers from back, leg, and ankle pain, which at times disrupts his ability to sleep. [AR at 75, 90, 94.] Plaintiff further reported that he

---

[6](...continued)
claimant's physicians on the ultimate issue of disability, ... he cannot reject them without presenting [specific and legitimate] reasons for doing so.") (quotations and citation omitted); Lester, 81 F.3d at 830-31 (the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of a treating or examining physician).

cannot stand for a "long time" or sit "to[o] long," walks with a cane or brace, often needs someone to be with him when he goes out because he falls down a lot, worries that even a small rock or stick might cause him to fall, cannot lift over five pounds, and has difficulty squatting or kneeling. [AR at 76, 78-81, 95.] Plaintiff specified to Dr. To during the October 4, 2008, Evaluation that "[s]itting three minutes, standing five minutes, and walking half a block ... aggravate[s] his back pain." [AR at 99.]

When the record contains medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying Bunnell to subjective physical complaints). Under such circumstances, an ALJ can reject a plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The following factors may be considered in weighing a plaintiff's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient; rather, the ALJ must identify what [statements are] not credible and what evidence undermines the claimant's complaints." Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting Lester, 81 F.3d at 834).

Here, because the record contains no evidence of malingering by plaintiff,[7] the ALJ was

---

[7] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [to be] not credible to the extent they are inconsistent with the above [RFC] assessment." [AR at 14.] However, the ALJ provided no specific reasons for finding plaintiff's subjective symptoms partially incredible and failed to cite any specific evidence that undermines the extent of plaintiff's complaints. [See id.] As the ALJ's general conclusion that the extent of plaintiff's subjective symptoms is not credible, by itself, is an insufficient basis for rejecting plaintiff's credibility (Berry, 622 F.3d at 1234) -- and the ALJ may have found plaintiff disabled (i.e., unable to perform even sedentary work) if he had credited plaintiff's subjective symptoms -- the Court concludes that remand is necessary so that the ALJ can properly consider plaintiff's credibility and subjective symptoms.[8]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider the medical opinions represented in Dr. To's Evaluation, the January 26, 2009, PRFCA, and the July 28, 2009, Medical Report; plaintiff's RFC; and plaintiff's credibility. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

/

/

---

[8] As remand is warranted for the reasons discussed herein, the Court exercises its discretion not to address plaintiff's remaining contention of error.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 16, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE